No. ——

First Circuit

## GARRISON v. NATALBANY LUMBER COMPANY

(June 26, 1926. Opinion and Decree.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Petitory and Possessory Actions—Par. 11, 13.**

Plaintiffs who have not a patent under the purchase by their vendor, but a receipt for public land which the state had the power and authority to sell without a patent, is sufficient to maintain a petitory action.

2. **Louisiana Digest—Petitory and Possessory Actions—Par. 11, 13.**

A receipt for public land which was sold by the state, which had power and authority to sell, accompanied by actual possession for more than thirty years is sufficient title in a petitory action to defeat the adverse claimant.

(Civil Code, Article 3437.)

Appeal from the District Court, Parish of Livingston. Hon. Columbus Reid, Judge.

Action by Mrs. Anna Garrison, et al., against Natalbany Lumber Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

H. K. Strickland, of Baton Rouge, attorney for plaintiff, appellee.

Kemp & Buck, of Amite, attorneys for defendant, appellant.

ELLIOTT, J. Action of slander of title, defendant denying that the plaintiffs have actual possession as owners, alleging that it is in actual possession as owner by title and setting out its title.

From a judgment in favor of the plaintiffs the defendant appealed.

Mrs. Anna Garrison, widow of Stephen A. Garrison, deceased, intestate; Lawrence Garrison, Clyde M. Garrison; Lillie Garrison, wife of James Seymour; Edna Garrison, wife of Walter Comeaux; Alma Garrison, divorced wife of George U. LeBlanc; Margery Garrison, wife of Louis Bauer; George S. Garrison; Anna Garrison, wife of William Kennard; Isetta Curtis, wife of E. A. Burke; Wallace Curtis, Maime Curtis; Rose Curtis, wife of Dunbar Martin, and Leon Curtis, heirs at law of Stephen A. Garrison, deceased, brought this action against Natalbany Lumber Co., Ltd., for slander of their title to the SE¼ of the SW¼, Section 32, T. 5 S., R. 3 E., situated in the Parish of Livingston. The parties to the suit have not raised any question of recusation, but we observe from the record the order signed by a member of this court, at the time the judge of the District Court in and for the Parish of Livingston, in the Succession of Charles W. Henry, dated June 9, 1906. The order appears on page 12 of the abstract of title placed in the record by the parties. Natalbany Lumber Co., Ltd., is claiming under Charles W. Henry and this abstract shows that at the time said order was signed Stephen A. Garrison was also claiming title and possession to this land, as well as Charles W. Henry. The conflicting claims, however, were not involved in the matter acted on by the court in said order, and therefore it does not appear that any legal ground for recusation exists on part of the member of this court who signed the order mentioned.

Natalbany Lumber Co., Ltd., excepted to the demand of the plaintiffs on the ground that their petition sets forth no right or cause of action. That their petition does not state the date of the com-

mencement of their alleged possession nor any specific act of slander. Their petition alleges that the plaintiffs through their authors have had actual possession of the property in question by titles translative of property for more than thirty years and that their title has been slandered by defendant. This was a sufficient averment. The exception was properly overruled. Natalbany Lumber Co., Ltd., then answered, denying plaintiffs possession as owners and alleged that it was in actual possession as owner of the timber, except the oak, by title, and set out the chain of title of its authors as owners of the land, of which the timber was part, back to the government of the United States, called its vendor of the timber in warranty and prayed that plaintiffs' demand be dismissed. Mrs. Garrison and her co-plaintiffs moved to strike out the call in warranty on the ground that the defendant by its answer had converted the action into a petitory action with itself as plaintiff, and that the plaintiff in a petitory action could not call his vendor in warranty. The plaintiff in a petitory action can not call his vendor in warranty. If only the question of possession is at issue there can be no call in warranty. Simon vs. Reynaud, 10 La. Ann. 506; Foote vs. Pharr, 115 La. 35, 38 South. 885; Clapham vs. Clayton, 118 La. 419, 43 South. 36. The Natalbany Lumber Co., Ltd., can not, under its answer, be regarded as a defendant in a petitory action, consequently defendant has no ground for complaint on account of the ruling striking out the call in warranty; we find the ruling to be correct.

Natalbany Lumber Co., Ltd., offered parol evidence for the purpose of showing its actual possession of the timber as owner and offered the chain of title of its authors back to the government of the United States for the purpose of showing its ownership by title. We will therefore consider the claim of the defendant first. On the question of actual possession, the evidence shows that defendant and its authors have cut a few trees and some wood on the land at different times; but the plaintiffs have cut longer and more than the defendant and both sides have paid taxes. It seems plain that defendant can not depend on the acts of possession which itself and authors have exercised and it must fail unless it has adduced and made out a title which should be recognized against the plaintiffs. Defendant makes out a regular chain of title deraigning from the United States government through a patent issued to Caleb Cushing on November 3, 1877. The patent issued to Caleb Cushing states that it was issued pursuant to a judgment of the Supreme Court of the United States in a suit entitled Caleb Cushing vs. United States, rendered in 1873 at the October term of that court, a copy of the opinion being on file in the land office at Washington, D. C. The patent further declares that Cushing was entitled, under the mandate of the court to 4122 and 22-100 acres of land and that the SE¼ of the SW¼, Section 32, T. 5 S., R. 3 E., former Greensburg Land District of Louisiana, was part of the land confirmed to him under said judgment. One could hardly ask for a better showing. We have endeavored to find the report of the decision in order to ascertain what bearing, if any, it has on the previous purchase of the same land from the State of Louisiana made by Joseph A. Minton, which will be taken into account as having an important effect on this patent. A copy could be obtained from the land office at Washington, but we find none in the record.

On the trial Mrs. Garrison and her co-

plaintiffs as legal heirs of Stephen A. Garrison offered evidence, parol and written to establish their possession as owners by title translative of property as alleged in their petition. The evidence shows that Stephen A. Garrison acquired by title from W. J. Powers a tract of land containing 226 16-100 acres, described by boundaries, in December, 1893. The boundaries included the land in question. Mr. Garrison moved on the land with his family, lived on it and cultivated about twenty or twenty-five acres for nearly twenty years. It had a residence on it when he bought it and the field that he cultivated was fenced and he kept it fenced and continued cultivating the same field. The entire tract was not fenced, only the field was fenced, about an acre and a half of the SE¼ of the SW¼ of Section 32, T. 5 S., R. 3 E., being included in the field. The balance of the land involved in this suit was uninclosed and unimproved, as well as the balance of the tract outside the inclosures of house and field. William J. Powers acquired the tract from John S. Powers in July, 1888. The title from John S. Powers to W. J. Powers is by boundaries which included the land in suit. W. J. Powers occupied the land and cultivated the field while owner of it. John S. Powers acquired the tract of land from the Succession of Addie C. Norwood in June, 1887, and had actual possession of the tract while he owned it. Addie C. Norwood acquired the tract by boundaries from Mrs. Louisa Allen in August, 1886. The boundaries included the land in suit. Mrs. Allen cultivated the field and had actual possession of the tract. Louisa Allen acquired the tract described by the government subdivisions from Joseph A. Minton in January, 1873. The sale includes the land involved in this suit. Joseph A. Minton purchased the land in question from J. B. McClendon, receiver of the land office at Greensburg, Louisiana,

on May 14, 1862. We take historical notice of the fact that the land office of which J. B. McClendon was the receiver on May 14, 1862, was that of the State of Louisiana. That the state had, at that time, seceded from the United States and become a sovereign power, with an organized government of its own; that it became and was at that time as an incident of its sovereignty the owner of all the public land that previous to the secession had belonged to the United States. That the state had a land office at Greensburg for the purpose of selling the public land that it owned, with J. B. McClendon as receiver. That on May 14, 1862, the United States did not have, as such, any right, authority or jurisdiction over the land that had formerly belonged to it in this state as part of its public domain and that all such land had become the property of the state for the time being. C. C. Art. 486. That the state as a sovereign power with authority over the land in question for the time being had the power to sell the land. Vattel's Law of Nations, Chap. XXI, p. 116.

Assuming, as above stated, it follows that the land in question belonged to the state on May 14, 1862, and the record shows that the right and title of the state to this land passed to Joseph A. Minton. And the right and title of the state having passed to Minton, no right or title to this land could result or reinvest in the United States, due to the readmission of the state into the United States in 1864. It seems to us that in such a situation this land could not become again a part of the public domain of the United States, because the state, while a sovereign power with power and authority to sell this land had sold same to Minton. The Constitution of 1868, Article 149, confirmed all laws and contracts that had been made by the state from January 26, 1861, to the time of the adoption of the Constitution of 1868.

The receipt issued by J. B. McClendon, register, to Joseph A. Minton on May 14, 1862, comes within the purview of Act 104 of 1871, Sec. 12, which reads:

"Be it further enacted, etc., that the sales and locations of public lands made by the state from the 1st of January, 1861, to the 14th of October, 1864, which are shown by the records of the registrar's office, be and the same are hereby confirmed and patents shall on demand be issued in the name of the purchaser and be delivered to the party surrendering the proof of entry or location or on making to the satisfaction of the registrar proof of the loss."

In State vs. Bozeman, 156 La. 638, 101 South. 4, the Supreme Court held that a patent issued by the United States for land which did not belong to the United States at the time was null and void.

The receipt issued to Minton indicates that the land called for by the receipt is high land. The Act 104 of 1871 applies alike to all the lands which had been sold by the state within the time indicated, whether high or low. The confirming power of Act 104 of 1871 fixed in Minton a vested and irrevocable right to this land. The efficacy of Act 104 of 1871 was recognized by the Supreme Court in Marks vs. Martin, 27 La. Ann. 527. In that case a purchaser from the state was sued in a petitory action by the holder of a patent from the United States and the court held that a subsequent purchaser from the United States had no right which could divest the previously acquired and vested right, acquired from the state. The case was taken on a writ of error to the Supreme Court of the United States, 97 U. S. 345, and the decision in Marks vs. Martin, 27 La. Ann. 527, was not disturbed. The public land situation in the State of Louisiana on May 14, 1862, was involved in the case, Cole vs. Thompson, 35 La. Ann. 1026, and Betz, etc.,

vs. I. C. R. R. Co., 52 La. Ann. 893, 900, etc., and 922, etc. A rehearing was granted in the case last mentioned and the decision due to a compromise never became final, but the case is generally regarded as an authority bearing on the subject of land sales at that time by the agents of the state. The cases cited uphold the rights of purchasers from the state in the situation mentioned. The plaintiffs have not produced a patent under the purchase by Minton, but a receipt for public land, which the state had the power and authority to sell without a patent is sufficient to maintain a petitory action. 4 N. S. 260; Newport vs. Cooper, 10 La. 155; Sarce vs. Dunoyer's Executor, 11 La. 220; Guidry vs. Woods, 19 La. 334; McGill vs. McGill, 4 La. Ann. 262; Terry vs. Hennen, 4 La. Ann. 458; Dickason vs. Smith, 5 La. Ann. 196; Simier vs. Perrodin, 35 La. Ann. 931; Broussard vs. Broussard, 43 La. Ann. 931, 9 South. 910; Broussard vs. Pharr, 48 La. Ann. 230, 19 South. 272; Betz vs. Illinois Central R. R. Co., 52 La. Ann. 393, 24 South. 644. If such a receipt is sufficient to support a petitory action, it is reasonable to hold that such a receipt, accompanied by actual possession is sufficient to defeat an adverse claimant in a case like the present.

We conclude that the patent issued by the United States to Caleb Cushing in 1877 for the land in question is null and void because the United States was not the owner of the land at the time, a superior and vested right and title to the land having been acquired by Joseph A. Minton from the State of Louisiana by the purchase of May 14, 1862.

More than forty years has passed since Joseph A. Minton sold and delivered the land to the authors of the Garrison title. More than forty years has passed since the United States issued the patent to Caleb Cushing. And the evidence shows

that for more than thirty years the successors in title under Minton have had actual possession of a tract of land which included within the boundaries by which it was sold the land in dispute and with the intention of possessing as owners the entire tract called for by the boundaries. C. C. Art. 3437. The plaintiffs, Mrs. Anna Garrison and her co-plaintiffs, have not only had actual possession of the land as owners under title translative of property for more than thirty years through their authors in title, but they adduce and exhibit the superior and true title to the land. The judgment appealed from is correct.

Judgment affirmed, the defendant and appellant to pay the cost in both courts.